UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY BEJARANO,<br><br>                              Petitioner,<br><br>vs.<br><br>KIM HOLLAND, Warden,<br>                              Respondent. | Case No.:  14CV947-LAB(JMA)<br><br>**REPORT & RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR AN EVIDENTIARY HEARING** |

Petitioner Bobby Bejarano ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §2254.  (Doc. No. 1.) Respondent Kim Holland ("Respondent") has filed an Answer to the Petition. (Doc. No. 10.)  Petitioner thereafter filed a Traverse.  (Doc. No. 19.)  The Court, having reviewed the Petition, Answer, Traverse, and all the supporting documents and lodgments submitted by the parties, hereby recommends that the Petition and Request for Evidentiary Hearing be DENIED.

///

///

///

14CV947-LAB(JMA)

## FACTUAL & PROCEDURAL BACKGROUND

Petitioner is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at the California Correctional Institution ("CCI") at Tehachapi, California. On June 21, 2012, at approximately 10 a.m., Correctional Officer L. Garza was monitoring the morning yard when he observed Petitioner and inmate H. Juarez punching inmate R. Romero in the head and upper torso area. (Lodgment 3 at 1.) Officer Garza then ordered the yard down and notified the yard gun officer and Central Control of a fight via radio. (Id.) As Officer Garza was responding with staff, he saw Petitioner and Juarez continue to strike Romero in the head and upper torso area. (Id.) Officer Garza gave the three inmates a verbal command to stop fighting. (Id.) The inmates complied and assumed the prone position. (Id.) Officer Garza placed Romero in restraints and proceeded to conduct a clothed body search for weapons and contraband. (Id.) When Officer Garza turned Romero onto his side, Officer Garza observed a deadly weapon in the dirt area where Romero was lying. (Id.) The weapon was a piece of metal inserted inside a pen approximately five inches in length. (Id.) Romero sustained two puncture wounds to his left abdomen, one puncture wound to his right shoulder and another to his right bicep. (Lodgment 4 at 2.) The staff later discovered Petitioner had been wearing a pair of altered state-issued shorts that had three pockets sewn on the inside of the shorts. (Lodgment 2 at 7 of 8.)

Correctional Sergeant M. Barra completed a supplemental report, dated June 21, 2012, recounting his response to the incident (Id. at 5 of 8.) Sergeant Barra's supplemental report corroborated Officer Garza's report, stating that Officer Garza located the weapon underneath Romero. (Id.)

Correctional Officer R. Alvarez authored a crime incident report, dated June

21, 2012. (Lodgment 2 at 5 of 8.) Officer Alvarez stated he was informed by radio of the assault while performing his duties as Security and Investigations Officer. (Id.) Officer Alvarez reported to the Facility "A" Yard #1, where staff advised him of the battery on an inmate with a manufactured deadly weapon. (Id.)

On July 3, 2012, Petitioner was issued a preliminary copy of the Rules Violation Report ("RVR") for battery on an inmate with a weapon. (Lodgment 3.) On July 17, 2012, Petitioner was informed he had been assigned Correctional Officer G. Badilla as the investigative employee for the RVR. (Lodgment 5 at 1 of 2.)

The rules violation hearing was held on July 31, 2012. (Lodgment 2 at 2 of 8.) Correctional Lieutenant J. Sigler was the Senior Hearing Officer ("SHO"). (Id.) Petitioner stated he had additional questions to give to Officer Badilla. (Id.) The SHO obtained the additional questions from Petitioner and postponed the hearing. (Id.) On August 2, 2012, the hearing resumed, at which point the SHO read the charges to Petitioner. (Id. at 3 of 8.) Petitioner pled not guilty. (Id.) Petitioner submitted a handwritten statement by Correctional Officer Jones, in which Officer Jones declared no weapon was found underneath Romero. (Id.) Petitioner also submitted Romero's declaration, in which Romero stated there was no weapon used during the altercation between Petitioner and Juarez. (Id.) Registered Nurse Ortiz, one of Petitioner's questioned witnesses, stated the weapon was "found near [Romero], by the fence." (Lodgment 5 at 2 of 3.)

During the SHO's questioning of Petitioner, he could not explain how Romero sustained four puncture wounds during the altercation. Instead, Petitioner stated Romero "may have already had them." (Id. at 4 of 8.) During the questioning, Petitioner also admitted to the act of "Battery" on Romero. (Id.)

The SHO found Petitioner guilty of violating California Code of Regulations,

1   Title 15, §3005(d)(1) for the specific act of battery on an inmate with a weapon.

2   (Id.) In reaching this decision, the SHO relied on the following "preponderance of

3   evidence submitted at the hearing[:]" (1) Officer Garza's written report of the

4   incident; (2) Sergeant Barra's written report, stating he witnessed the altercation

5   and the discovery of the weapon under Romero; (3) the Crime Incident Report

6   authored by Correctional Officer R. Alvarez, stating he was advised via radio of

7   the assault and discovery of the manufactured deadly weapon; (4) a medical

8   report dated June 21, 2012, documenting the four puncture wounds Romero

9   sustained in the altercation; and (5) Petitioner's partial admission of guilt when he

10   stated he was guilty of battery. (Id. at 5 of 8.) The SHO found no evidence

11   indicating Juarez or Petitioner was in physical possession of the weapon

12   recovered in the immediate area of the incident. (Id.) However, based on the

13   evidence presented, the SHO stated it was reasonable to believe either

14   Petitioner or Juarez was in possession of the weapon recovered from under

15   Romero. (Id. at 6 of 8.) The SHO further stated his belief that Petitioner and

16   Juarez acted in concert with each other in committing the battery on Romero.

17   (Id.) The SHO found no merit in Petitioner's testimony that Romero's injuries

18   were caused by foreign objects on the ground because the medical staff testified

19   the injuries sustained were puncture wounds. (Id. at 7 of 8.) The SHO discredited

20   Romero's declaration denying the use of a weapon during the altercation

21   because the weapon, according to documentation, was found under Romero,

22   and its location was also identified to the medical staff. (Id.) The SHO noted the

23   staff also discovered Petitioner wearing a pair of altered state-issued shorts that

24   had three pockets sewn on the inside of the shorts, commonly used by inmates

25   to conceal contraband. (Id.)

26   Petitioner was assessed one hundred and eighty days forfeiture of good-time

27

credit; ninety days temporary placement in privilege group "C;" ten days loss of yard; and referral to the Institutional Classification Committee with the recommendation of a Solitary Housing Unit assessment. (Id.)

Petitioner appealed the guilty finding through the prison's grievance system. On November 30, 2012, Petitioner received notification of a delay in the appeal process at the second level by reason of "appeal office backlog." (Lodgment 7.)  The extended due date for the second level appeal decision was listed as January 14, 2013. (Id.) On January 18, 2013, Petitioner's appeal was denied at the second level of review. (Lodgment 6.) On April 5, 2013, Petitioner's appeal was denied at the third level of grievance review. (Lodgment 8.) Petitioner then filed petitions for writs of habeas corpus in the California courts. (Lodgments 9, 11 &13.) These petitions were denied at every level of judicial review. (Lodgments 10, 12 & 14.) Thereafter, Petitioner filed the instant Petition. (Doc. No. 1.)

## DISCUSSION

### A.   Scope of Review

The Court may entertain a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A writ of habeas corpus is the sole remedy when a prisoner challenges the fact or duration of confinement, and seeks immediate or speedier release from that confinement. Wolff v. McDonnell, 418 U.S. 539, 554 (1974); Preiser v. Rodriguez, 411 U.S. 475, 498 (1973).

As amended, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") reads:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be

5

1
2
3
4
5
6

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
(1) resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State court proceeding.

7   28 U.S.C. § 2254(d) (emphases added).

8   For purposes of § 2254(d)(1), clearly established federal law includes
9   only "the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's
10  decisions." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003). A state court
11  decision is contrary to clearly established federal law "if the state court
12  arrives at a conclusion opposite to that reached by this Court on a question
13  of law…[or] confronts facts that are materially indistinguishable from a
14  relevant Supreme Court precedent and arrives at [an opposite result]."
15  <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000). "A state-court decision that
16  correctly identifies the governing legal rule but applies it unreasonably to
17  the facts of a particular prisoner's case certainly would qualify as a decision
18  'involving an unreasonable application of…clearly established Federal
19  law.'" <u>Id.</u> at 407-08. A state court decision might also involve an
20  unreasonable application of clearly established federal law if it
21  "unreasonably extend[s] a legal principle from our precedent to a new
22  context where it should not apply (or unreasonably refuse[s] to extend a
23  legal principle to a new context where it should apply)." <u>See</u> <u>id.</u> at 409.

24  A federal habeas court must use an objective approach in determining
25  whether the state court's decision was an unreasonable application of federal
26  law. <u>See Id.</u> "The question under AEDPA is not whether a federal court believes

6

1   the state court's determination was incorrect but whether that determination was

2   unreasonable-a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S.

3   465, 473 (2007). State court factual determinations are presumed to be correct.

4   <u>Id.</u> at 473-74 (citing 28 U.S.C. § 2254(e)(1)). However, the petitioner can rebut

5   this presumption through "clear and convincing evidence." <u>Id.</u> (quoting 28 U.S.C.

6   § 2254(e)(1)).

7   **B.   The State Court's Decision**

8          When there is no reasoned decision from the state's highest court, the

9   Court "looks through" to the last reasoned state court decision. <u>Ylst v.</u>

10  <u>Nunnemaker</u>, 501 U.S. 797, 801-06 (1991). Here, because Petitioner's claims

11  were denied by the California Supreme Court and the Court of Appeal in

12  unreasoned decisions, this Court will look through to the Imperial County

13  Superior Court's decision. (Lodgment 10.) The Superior Court found Petitioner

14  was afforded due process of law because the SHO's decision was supported by

15  some evidence. In doing so, the court observed that a deadly weapon was

16  discovered in the immediate area where Petitioner and Juarez were subdued for

17  assaulting Romero, who was found with four puncture wounds. <u>Id.</u> Additionally,

18  the court noted Petitioner's shorts had been modified to include pockets where

19  he could hide contraband. <u>Id.</u>

20  **C.   Due Process Rights**

21         Petitioner asserts his due process rights were violated because CRCR's

22  second-level appeal decision was "untimely," and thus Respondent "waived [its]

23  right to respond." (Doc. No. 19 at 9.) Respondent contends Petitioner was

24  afforded all the process that was due, and any alleged violation of the California

25  Code of Regulations regarding the timeliness of the processing of Petitioner's

26  second-level appeal does not state a federal question required for habeas review

27

14CV947-LAB(JMA)

by this Court.

Prison disciplinary proceedings may violate a petitioner's procedural due process rights if the petitioner has a protected liberty interest at stake. <u>See Walker v. Sumner</u>, 14 F.3d 1415, 1419 (9th Cir. 1994). A protected liberty interest may arise under the due process clause itself or under the laws of the states. <u>See Kentucky Dep't of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989). When a state creates a protected liberty interest, "the Due Process Clause requires fair procedures for its vindication--and federal courts will review the application of those constitutionally required procedures." <u>Swarthout v. Cooke</u>, 562 U.S. 216, 220 (2011). Liberty interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 566 (1972).

The Due Process clause accords prisoners the following procedures: (1) written notice of the claimed violations; (2) a brief period of time to prepare for the hearing; (3) a written statement by the fact finder regarding the facts relied upon in reaching the decision and the reasons for disciplinary action; (4) an opportunity to call witnesses and present documentary evidence; and (5) an opportunity to seek the aid of a fellow inmate or prison staff for complex matters. <u>Wolff</u>, 418 U.S. at 563-70. Courts grant prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979).

Here, Petitioner argues his due process rights were violated when the second-level appeals decision was not rendered in a timely manner. On

8

1  November 30, 2012, Petitioner received notification of a delay in the appeal
2  process, and the due date for the second-level appeal was extended to January
3  14, 2013. (Lodgment 7.) On January 18, 2013, Petitioner received notification
4  that his appeal was denied at the second level of review. (Lodgment 6.)
5  Petitioner argues that because there was such a delay, Respondent has waived
6  its right to respond under California Code of Regulations, Title 15, § 3084.8(c).
7  The Court finds no merit in this argument. Petitioner has failed to demonstrate
8  that the relevant section of the California Code of Regulations grants him a liberty
9  interest protecting him from untimely appeal decisions. To the contrary, a
10 prisoner has "no legitimate claim of entitlement to a grievance procedure." <u>Mann</u>
11 <u>v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). Accordingly, Petitioner's claim that
12 his due process rights were violated as a result of an untimely appeal decision
13 should be denied.

14 **D.   Sufficiency of Evidence**

15        Petitioner further argues that the state courts have unreasonably applied
16 the "some evidence" standard in upholding the CDCR's charge of battery on an
17 inmate with a weapon. Respondent contends the SHO found Petitioner guilty
18 based on substantial evidence, which easily meets the "some evidence"
19 standard.

20        A prisoner has a protected liberty interest in good time credits when the
21 state has created a statutory right to such credits. <u>See Wolff</u>, 418 U.S. at 557. In
22 addition to the <u>Wolff</u> requirements, due process requires a showing of "some
23 evidence" supporting the decision of the SHO or reviewing official to revoke good
24 time credits. <u>See Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 447
25 (1985). "[T]he relevant question is whether there is any evidence in the record
26 that can support the conclusion reached by the disciplinary board." <u>Id.</u>

27

1    The record presents ample evidence supporting the SHO's decision finding
2    Petitioner guilty of battery on an inmate with a weapon. First, the SHO relied on
3    Officer Garza's and Sergeant Barra's reports, both of which confirmed
4    Petitioner's and Juarez's assault on Romero and the subsequent discovery of the
5    deadly weapon in the immediate vicinity. (Lodgment 2 at 4-5.) Next, Romero's
6    medical report states that he sustained four puncture wounds, including one to
7    his bicep area, one to his left upper back, and two to his lower abdomen.
8    (Lodgment 2 at 5.) The SHO also considered the fact that Petitioner admitted to
9    committing battery. (Lodgment 2 at 3 & 6.) Lastly, prison staff discovered that
10   Petitioner had been "wearing a pair of altered state issued shorts that had three
11   pockets sewn on the inside of the shorts commonly used by inmates to conceal
12   contraband." (Lodgment 2 at 7.) Based on this evidence, it was reasonable for
13   the SHO to conclude that either Petitioner or Juarez was in possession of the
14   weapon recovered under Romero. (Lodgment 2 at 6.)

15   Petitioner contends there is insufficient evidence to meet the "some
16   evidence" standard because there were conflicting reports as to the precise
17   location of the weapon and whether the weapon was actually discovered at the
18   scene. (Doc. No. 19 at 10.) As for the first contention, any dispute as to the exact
19   location (up to five feet in distance) of the weapon is insufficient to undermine the
20   SHO's finding that a weapon was likely in either Petitioner's or Juarez's
21   possession during the incident. Further, because Officer Garza reported finding
22   the deadly weapon underneath Romero and the weapon's location was identified
23   to responding medical staff, it was reasonable for the SHO to discredit Romero's
24   testimony asserting there was no weapon used during the incident or found at
25   the scene of the incident. (Lodgment 2 at 7.) Lastly, Officer Jones's handwritten
26   statement to the effect that Officer Garza's search of Romero did not lead to the

27

1  discovery of the weapon was documented and considered by the SHO; the SHO

2  relied on substantial evidence contrary to Officer Joness' statement, finding

3  Petitioner guilty of battery with a weapon. In sum, the "some evidence" standard

4  in <u>Hill</u> was clearly satisfied in light of the evidence presented against Petitioner.

5  **E.   Evidentiary Hearing**

6        Petitioner contends an evidentiary hearing should be held, claiming he has

7  presented evidence contrary to the SHO's and state court's findings. Petitioner

8  further alleges he has not been afforded a state court hearing to examine

9  evidence that might reduce his charge to a simple battery.

10        "A habeas petitioner is entitled to an evidentiary hearing if: (1) the

11  allegations in his petition would, if proved, entitle him to relief; and (2) the state

12  court trier of fact has not, after a full and fair hearing, reliably found the relevant

13  facts." <u>Phillips v. Woodford</u>, 267 F.3d 966, 973 (9th Cir. 2001) (emphasis

14  omitted). "[I]f the record refutes the applicant's factual allegations or otherwise

15  precludes habeas relief, a district court is not required to hold an evidentiary

16  hearing." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007).

17        As discussed above, Petitioner's allegations do not refute the SHO's

18  findings, which the state court found to be supported by some evidence.

19  (Lodgment 10 at 2.) Officer Jones's statement regarding the absence of a deadly

20  weapon at the scene was considered by the SHO. (Lodgment 2 at 3.) Registered

21  Nurse Ortiz's statement regarding the location of the weapon ("near the victim, by

22  the fence") was also considered. (Lodgment 5 at 2 of 3.) Therefore, Petitioner is

23  not entitled to an evidentiary hearing because his arguments were considered by

24  the SHO and found to be outweighed by a preponderance of the evidence.

25  ///

26  ///

27

11

## CONCLUSION & RECOMMENDATION

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** the petition for writ of habeas corpus and request for an evidentiary hearing be **DENIED** with prejudice.

This report and recommendation is submitted by the undersigned Magistrate Judge to the United States District Judge assigned to this case, pursuant to the provisions of Title 28, United States Code, section 636(b)(1).

**IT IS ORDERED** that no later than July 31, 2015, any party to this action file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than August 7, 2015. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED**.

DATED: July 15, 2015

_____

Jan M. Adler
U.S. Magistrate Judge

12

14CV947-LAB(JMA)